## SHUMATE v. HARBIN.

1. JURISDICTION—SUBJECT MATTER—PARTIES.—A mother residing with her infant son in this State contracted with a builder for the repair of a house in this State belonging to the infant, and afterwards removed to another State with her son and second husband. The builder brought action against the mother and her son and husband, procured order of publication, and had the summons published. The mother and her husband appeared and answered, and also the infant by guar-

dian *ad litem* duly appointed. *Held*, that the court had jurisdiction of the subject matter of the action, and that mother and son were necessary parties and the husband a proper party.

2. INFANTS—IMPROVED PROPERTY—EQUITY.—Where the mother of a fatherless child contracts for necessary repairs to a house belonging to the infant, without which repairs the house would be useless and unprofitable, the contractor believing at the time that it is the property of the mother, the Court of Equity will give to the contractor for his reasonable charges a claim against the property to the extent to which his work has added to its value. To this end, it was ordered that the master rent the premises and apply the proceeds to the payment of taxes and master's fees, then to the payment of the contractor's debt; and after that it should be rented for the benefit of the infant—the costs of the action not to be taxed against the infant.

Before IZLAR, J., Greenville, July, 1890.

Action by William T. Shumate against Gilly Harbin, B. D. Harbin, and Michael J. Roberts. The Circuit decree was as follows :

This case came on to be heard before me at the regular July term, 1890, of the Court of Common Pleas for the County of Greenville aforesaid. The pleadings being read, the counsel for the defendant moved to dismiss the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. I concluded to hear the whole case, reserving my judgment on this motion.

The testimony was taken in open court. The plaintiff was examined and his testimony tends to sustain the allegations of the complaint. The view that I take of the case will not require the testimony to be set out in detail. Upon examining the complaint, I find the following facts alleged, as constituting the plaintiff's cause of action : That the plaintiff is a contractor and builder doing business under the firm name of W. T. Shumate & Co. On June 5th, 1880, Gilly Harbin, mother of Michael J. Roberts, by a former husband, bought a lot in the city of Greenville, paid for it, and had the title made to her said son in fee. The deed was duly recorded. At this time Michael J. Roberts was a minor about four years old. In January, 1887, the house upon said lot being old and almost uninhabitable, could not be rented, and the property was wholly unproductive and heavily taxed.

During said month and year, Gilly Harbin and her husband contracted with the plaintiff to rebuild and repair the old building on said lot, and to furnish the material and labor for the purpose. at the price of $162. Subsequently they made a contract for additional work at an agreed price of $22.50, the whole aggregating $184.50.

Plaintiff made the repairs and put the house in good condition, and it has been occupied ever since, part of the time by the defendants, balance of the time by tenants of Gilly Harbin, at a good rental. Michael J. Roberts being a minor with no guardian at the time of making the contract and doing the work, plaintiff supposed that property to belong to Gilly Harbin, but afterwards learned that it belonged to Michael J. Roberts, who was a minor, and that his mother and her husband were acting for him. No part of said bill has been paid except $35. Gilly and her husband owned no property in this State at the time the work was done nor since, and they and Michael J. Roberts are non-residents. Michael J. Roberts is still a minor under fourteen years. Said repairs and improvements were necessary for the preservation of the property and to render it remunerative, and were for the benefit of the minor's estate.

The complaint seeks to subject the house and lot of Michael J. Roberts, minor, to the payment of the debt alleged to be due to the plaintiff for rebuilding and repairs. The cause of action alleged in this complaint grows out of the contract made between the plaintiff and the defendants, Gilly Harbin and her husband, with reference to the repairs of a house upon the lot of the defendant, Michael J. Roberts, a minor. I think it may be safely asserted that the complaint states no cause for action against the defendant, Michael J. Roberts, nor against his mother, Gilly Harbin. The complaint alleges that Michael J. was, at the time of making the alleged contract, and is now, a minor under the age of fourteen years, and that Gilly Harbin, his mother, was at the time of making the alleged contract, and is now, a married woman. There is no pretence whatever that the minor made any contract with the plaintiff, and the mother being a married woman, could not make a contract of the nature set out in the complaint, so as to bind herself individually. The defendant, B. D.

Harbin, might make such contract, and bind himself individually, but we fail to see anything in the facts of the case, as alleged or proven, which would authorize him or his wife to bind the estate of the minor, Michael J. Roberts, either at law or in equity. Even if all the defendants were residents of this State, we are satisfied that the complaint does not state facts sufficient to constitute a cause of action against the defendants, or any or either of them, and that the complaint should be dismissed.

But I go further. I think the complaint should be dismissed as to the defendant, Gilly Harbin, and her husband, B. D. Harbin, for want of jurisdiction as to the persons of the defendants. The complaint alleges that all of the defendants are non-residents, and that at the time of the making of the contract, the defendants, Gilly Harbin, and her husband, B. D. Harbin, had no property in this State, nor have they had any in this State since that time. "Civil actions in the courts of record of this State shall be commenced by a service of a summons." Code, § 148. Section 156 of the Code provides for the service by publication of non-resident defendants. The publication could not certainly have been asked under either subdivision 1 or 2 [of section 156]. The case presented here could only come within the provisions of subdivisions 3 or 4, if within any. Did the case presented here fall within subdivision 3? To fall within this subdivision, the defendant must have property in the State, and the court must have jurisdiction of the subject of the action. These two things must concur. Now, the complaint shows on its face that the defendants, Gilly Harbin, and her husband, B. D. Harbin, had no property within this State, therefore they could not be made parties by publication, admitting that the court had jurisdiction of the subject of the action. The complaint itself shows that the court has no jurisdiction over the persons of the defendants. As was said in *Pennoyer* v. *Neff*, 95 U. S., 731: "The tribunals of one State have no jurisdiction over persons beyond its limits, and can inquire only into their obligations to its citizens, when exercising its conceded jurisdiction over their property within its limits." Taking it for granted that the subject of the action here is the subjecting of the real estate of Michael J. Roberts, in this State, to the payment of

the alleged contract for repairs, and that as to him, the court might acquire jurisdiction from service by publication, yet we have seen that complaint states no cause of action against him. The same result would follow if the service by publication is considered with reference to the fourth subdivision of section 156.

It is therefore ordered and adjudged, that the complaint herein be dismissed with costs.

The plaintiff appealed on the following exceptions: 1. His honor erred in holding that the complaint does not state facts sufficient to constitute a cause of action. 2. His honor erred in misconceiving the plaintiff's cause of action; plaintiff is seeking a judgment *in rem*, as will be seen by inspection of the complaint. 3. His honor erred in holding that plaintiff's complaint did not state facts sufficient to constitute a cause of action against the defendants or either of them. 4. His honor erred in holding that the court had no jurisdiction of the persons of the defendants, or either of them; all of them having answered. 5. His honor erred in deciding that there was nothing in the facts, alleged or proved, which authorized either Gilly Harbin or B. D. Harbin to bind the estate of the minor, Michael J. Roberts, either at law or equity. 6. Because his honor erred in not holding that the contract for improvements upon the real estate of the minor, Michael J. Roberts, was such as the Court of Equity would in the first instance have authorized, and in not holding further that said contract having been entered into and the improvements made without such authority, the Court of Equity should now ratify the same and grant the plaintiff the relief asked for. 7. His honor erred in not giving the plaintiff a judgment against B. D. Harbin, even taking the view of the case he did.

*Messrs. Westmoreland & Haynsworth*, for appellant.

No counsel contra.

March 19, 1892.   The opinion of the court was delivered by

MR. JUSTICE POPE.   Mrs. Gilly Roberts, a widow, on the 5th June, 1880, purchased a small lot, one-third of an acre, in the

city of Greenville, from her own funds paid the purchase money, and had the title therefor made to her infant son, Michael J. Roberts, aged four years. The deed of conveyance was recorded in the office of the register of mesne conveyance on the day of its execution. At the time of its purchase, the lot was bare of improvements. In 1884 or 1885, the taxes being unpaid, one F. A. Schlapbach, a son-in-law of Mrs. Roberts, redeemed the land from its purchaser at tax sales for $25, and, under an arrangement with Mrs. Roberts, erected a second-hand building on such lot, in which he lived for a time and which he rented to others for a year at $1.25 per week. Some time after 1885, but prior to January, 1887, Mrs. Roberts intermarried with B. D. Harbin. In January, 1887, Harbin and his wife were destitute of means and homeless. Mrs. Harbin's little son lived with them, but had no estate and no guardian. Under these circumstances, and at this time, application was made to Mr. W. T. Shumate, a contractor in that city, to make some improvements to the buildings then uninhabitable because of needed repairs. Mr. Shumate thought the property belonged to Mrs. Harbin. Under such contract, Mr. Shumate made improvements to the value of $184.54, and being paid $35, it left due him $149.54. Harbin and wife and the little boy lived in the house for some time, but afterwards moved to Floyd County, in the State of Georgia, she renting the house out.

On the 20th day of April, 1889, the said Shumate began his action in the Court of Common Pleas for Greenville County in this State against B. D. Harbin, Gilly Harbin, his wife, and the infant, Michael J. Roberts, as defendants, the summons therein being served by publication. The adult defendants answered as to the merits of the action. The infant defendant had a guardian *ad litem* appointed, and answered by such guardian *ad litem*. The issues being equitable, were tried by his honor, Judge Izlar. At the hearing, the defendants interposed the oral demurrer, that the complaint did not state facts sufficient to constitute a cause of action. The presiding judge, however, held the same under advisement, and allowed all parties to present all the testimony they desired in the questions raised in the pleadings. The foregoing summary presents the salient facts as developed by the pleadings

and in the testimony at the trial.    The Circuit Judge in his decree held that the demurrer should be sustained, and also that the court had no jurisdiction of the parties, and therefore dismissed the complaint with costs.    The plaintiff appeals to this court on grounds set up in the Brief.

At first we were inclined to adopt the conclusions of the Circuit Judge, but, upon reflection, we must hold that he erred in both.    The work done by the plaintiff was done upon premises located in the city of Greenville, which premises he believed were owned by Mrs. Harbin, she being in control thereof, and under a contract made with her in relation to such premises.    The subject matter was, therefore, within the jurisdiction of the court and the contract made in relation thereto while all the defendants were residents of this State.    Their removal to the State of Georgia afterwards could not destroy such subject matter, nor the contract made in regard to the same. Therefore, it seems to us, that under section 156, subdivision 4, both Mrs. Harbin and Michael J. Roberts were necessary parties, whose presence in court could be obtained by the publication of a summons against them.    This court has held that when a summons has not been served, and a party appears and pleads generally to the action, such appearance dispenses with the actual service.    Code, § 160; *Maxwell* v. *Lewis*, 21 S. C., 598; *Nesbitt* v. *Marshall*, 24 *Id.*, 510.    As to the husband, Harbin, he appeared in the action and answered generally.    He was not a necessary but a proper party.    *Lowry* v. *Jackson*, 27 S. C., 323–4; *Ross* v. *Linder*, 12 *Id.*, 592.    So much for the question of jurisdiction.

The demurrer presents the very serious question here—it belongs to that class of cases that appeal very directly to the conscience of the court—shall one be allowed to enjoy the property of another, and he a stranger, without any compensation therefor?    Or, to put the matter in a different form, shall property, that was useless to one, be made to increase in intrinsic value and become the source of constant profit through the expenditure of the means of another, innocently made, without creating a legal necessity whereby the owner is made to compensate him through whom the improvements were made?    Quite

often this question has been presented by one tenant in common, who has added largely to the value of the common stock by the expenditure of his own means, in a contest with the other co-tenants. In the case of *Buck, Hefflebower & Neer* v. *Martin*, 21 S. C., 592, this court announced: "Our cases have settled the question against the right of an improving tenant in common to the exclusive benefit of his improvements," citing an array of authorities in support of such conclusion. In the same case this court goes on to say: "To this rule, however, there are well established exceptions. * * * When, however, improvements have been erected by a co-tenant, which add value to the common estate, and erected under circumstances which would make it a great and obvious hardship upon the improving tenant to deprive him entirely of the benefit of such improvements, throwing their whole value into the common estate for partition, the disposition of the Court of Equity has always been to give the improving tenant the benefit thereof as far as consistent with the equity of his co-tenants. 1 Story Eq. Jur., § 655." To the same effect was the decision of this court in the case of *Lewis* v. *Price,* 3 Rich. Eq., 173.

The result of all the cases bearing upon this relief, peculiar to Courts of Equity, is that it is not what such improvements may have cost in dollars and cents that is allowed, but what additional value has been imparted to the premises by such improvements. *Lewis* v. *Price, supra.* The court said: "At the same time, I am content, in this case, that the tenant should have credit, *not for the cost of improvements,* but *for the value they imparted to the premises*" (italics ours). The principles announced in the foregoing cases were made to apply, notwithstanding some of the co-tenants *were infants.* We acknowledge these are cases between co-tenants. They are cited by way of illustration of certain principles of equity. Let it be remembered, also, that the improvements, in these cases referred to, were made without the sanction of the court in the first instance. In the case of *Buck, Hefflebower & Neer* v. *Martin, supra,* this court said: "We do not regard the rule, that the improving co-tenant is not entitled to compensation, as applying to all the cases where all the *co-tenants concur* in the improvements. From the peculiar circumstances

of this case, we must regard it as belonging to that class of cases. It is true that the children *were minors* at the time improvements were made, and could not consent for themselves, but they were with their mother, and the family needed a home; indeed, it was absolutely necessary. If at the time an application had been made to the court for leave to build a little cottage on the common property as a shelter for the family, can there be a doubt that such application would have been granted by the court acting for the children? *Ex parte Palmer*, 2 Hill Ch., 218; *Corbett* v. *Laurens*, 5 Rich. Eq., 316. *Then we regard that done which should have been done.* It was not the legal duty of the mother or her husband (stepfather) to support the children without the use of their shares."

Recurring to the case at bar, here was a destitute family, consisting of mother, stepfather, infant son, not only without money, but *homeless*. It was not the duty of the mother and stepfather to support the infant son. *Buck and others* v. *Martin, supra; Lewis* v. *Price, supra*. The son was only ten years of age, with no general or testamentary guardian; but his mother was his guardian by nature. As such, in the absence of one appointed by law, the mother is naturally expected to fill that office, and thousands of boys and girls, bereft by death of a father's care and protection, rise up and proclaim their mother blessed. By nature and education timid and retiring, when the interests of the fatherless need her protecting care, all obstacles are surmounted, all dangers bravely met. Under these circumstances, the plaintiff builds the modest home for their occupancy, believing the title in the mother. What before was useless, because untenantable, by the labor and means of plaintiff expended thereon, becomes not only a home fit for their occupancy, but when not so used by them afterwards, it became a source of revenue—$60 per year is its rental value.

Now, because it was not Mrs. Harbin's land, because the plaintiff made a mistake, because she is not her son's legal guardian, because she is not a tenant in common with him, because she is not administrator or executor of the estate of his father, because of these things, must this plaintiff lose all compensation for this work? We do not think so. This court in the case of *Spencer*

34—35

v. *Godfrey*, Bail. Eq., 468, held that when the mother, who was administratrix of the estate of her deceased husband, applied to the court in an *ex parte* petition, alleging that it was necessary to borrow money to pay debts and support her children, and that for that purpose a mortgage should be placed upon the land belonging to the estate of the intestate, and the Court of Equity granted such relief, that it did not lie in the power of one of the children afterwards to upset such an act of the court. The Court of Equity has jurisdiction over the persons and estates of infants. The result of the decisions seems to be, that what the Court of Equity would have done in the first instance upon application therefor, if the same be done without such authority, the court will afterwards, upon the propriety of such course being made manifest, confirm such act. *Ryan* v. *Bull*, 3 Strob. Eq., 91; *Corbett* v. *Laurens*, 5 Rich. Eq., 516; *Ex parte Palmer*, *supra*. That there was a mistake in the character of the person who made the contract will make no difference. It is substance, not form, which the Court of Equity regards. *Cater* v. *Eveleigh*, 4 DeSaus. Eq., 19; *James* v. *Mayrant*, *Ibid.*, 591.

But while so holding, we must be clearly understood to decide that not the cost of such improvements, but the value they impart to the premises, is the true rule. The property should be rented by the master of Greenville County, and after the payment of the master's fees and all taxes, the residue of such rent should be paid over to the plaintiff until he shall receive his debt of $149.54; and when the plaintiff shall have been so satisfied, the property should be rented for the benefit of its owner, Michael J. Roberts, until he obtains a guardian to manage the same, or reaches the age of twenty-one years. We feel constrained, however, in this instance, to instruct that there shall be no costs taxed against the infant defendant.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit Court, with directions that the principles of this decree be duly enforced in that court.