### 16971

JOHNNIE WILSON *ET AL.,* Appellants, v. SAM COOPER *ET AL.,*. Respondents

(86 S. E. (2d) 59)

*Messrs. Connor & Connor,* of Kingstree, *for Appellants,*

*M. L. Meadors, Esq.,* of Florence, *for Respondents,*

540

542

February 24, 1955.

LEGGE, Justice.

Appellants brought this action for partition, by sale and division of the proceeds, of approximately one hundred ninety-two acres of land in Williamsburg County that had been owned by one Moses Davis at the time of his death "many years ago." From the stipulation of counsel before the Master, it appears that Moses Davis died intestate,

leaving as his heirs his widow, Clarendon, or, Clander, or Clarinda, and their six daughters, namely: Sarah Davis, Hager Davis James, Martha Davis Wilson, Mary Davis Cooper, Amelia Davis Smith, and Della Davis, all of whom died intestate long before the commencement of the present action. The complaint alleges that the plaintiffs and the defendants, other than James Wilson, Thelma Wilson and Mose Wilson, are tenants in common by virtue of descent from Moses Davis; that James Wilson claims an interest in the property but in fact has none; that Thelma Wilson in 1945 purchased the interest of one of the grandchildren of Hager Davis James; and that Mose Wilson in 1943 purchased the interests of two of the six children of Della Davis.

As defense to the action the defendants pleaded an oral partition in 1913 among those in whom the title was then vested; and the validity or invalidity of the oral partition is the only issue involved in this appeal. The Special Referee found and held that it had never been consummated; and on appeal to the circuit court his report was reversed by decree of the Honorable J. M. Brailsford, Jr., Presiding Judge, dated May 2, 1953.

It is well settled in this state that valid partition of lands may be made by parol, where there is sufficient part performance to take the transaction out of the statute of frauds. And actual possession is deemed the most satisfactory evidence of part performance. *Kennemore v. Kennemore,* 26 S. C. 251, 1 S. E. 881; *Rountree v. Lane,* 32 S. C. 160, 10 S. E. 941; *Mims v. Hair,* 80 S. C. 460, 61 S. E. 968; *Dantzler v. Riley,* 109 S. C. 44, 95 S. E. 132; *Bolt v. Sullivan,* 173 S. C. 24, 174 S. E. 491.

It appears from the evidence that prior to 1913 Moses Davis' widow, Clarendon (or Clander or Clarinda) and three of their children, namely, Sarah Davis, Hager Davis, James and Della Davis, had died intestate, and that in April, 1913, the three surviving children, Martha Davis Wilson,

Mary Davis Cooper and Amelia Davis Smith, together with those in whom the interests of the deceased cotenants had vested, orally agreed to partition the land among themselves. They employed a surveyor, Lawrence H. M. McCullough, who ran the division lines and prepared and signed under date April 14-15, 1913, a "Map Showing Partition of Lands of Moses Davis." This map shows the division of the land into eight tracts, and their allotment as follows:

| Lot No. I | 34.1 acres | To Estate Sarah James |
|---|---|---|
| Lot No. II | 33.8 acres | To Martha Wilson |
| Lot No. III | 30.9 acres | To Estate Hager James |
| Lot No. IV | 30.6 acres | To Mary Cooper |
| Lot No. V | 26.2 acres | To Estate Della Davis |
| Lot No. VI | 2 acres | To A. B. Wilson |
| Lot No. VII | 4.6 acres | To Not indicated |
| Lot No. VIII | 30.6 acres | To Amelia Smith |

It appears from the evidence that A. B. Wilson, to whom was allotted Lot No. VI, was Abner Wilson, husband of Martha Davis Wilson; and that Lot No. VII, the allotment of which was not shown on the map, was in fact allotted, along with Lot No. III, to Hager Davis James.

The six plaintiffs and sixteen of the thirty-seven named defendants are descendants of Martha Davis Wilson; five of the defendants are descendants of Hager Davis James, four of Martha Davis Cooper, and nine of Della Davis. The remaining three defendants are Mose Wilson, Thelma Wilson and James Wilson, to whom we have already referred.

Of the parties to the action, the plaintiffs Johnnie Wilson and Nieman Wilson and the defendants Mose Wilson, Davis Wilson, Kelley Thomas and Joseph James testified. As pointed out in Judge Brailsford's decree, the testimony of Johnnie Wilson tended to confirm rather than refute the contention of the defendants that the oral partition, had been agreed upon and that the parties in interest had gone into possession in severalty of the parcels allotted to

them respectively. The testimony of Nieman Wilson, a grandson of Martha Davis Wilson, had no direct bearing on the issue of whether or not the oral partition had been consummated; but this witness, who gave his age as thirty-five or thirty-six, admitted that he had never asserted any claim to any part of the land until the present action.

Mose Wilson testified that he was not related by blood to any of the parties to the oral partition, but had married Sallie Cooper, one of the daughters of Mary Davis Cooper. He testified that he had been farming on the Mary Cooper tract (Lot No. IV) fourteen years along with one of the "other" heirs of Mary Cooper; that no one at present lives on Lot No. I, but that Thelma Wilson, who had purchased the interest of Clara James, one of the descendants of Hager James, is farming that tract; that Davis Wilson, the son of Martha Davis Wilson, lives and farms on Lot No. II; that Cyrus Brown, the husband of Annie, a daughter of Hager James, lives on Lot No. III and farms on Lot No. VII; that Ned Brown, who had married Clara (also known as Sissy) Davis, a daughter of Della Davis, lives with his wife on Lot No. V, and that they had been living and farming there as far back as he can remember; that Kelley Thomas, whose father had married Sarah Cooper, a daughter of Mary Davis Cooper, lives on the little tract of 4.6 acres designated as Lot No. VII and also farms Lot No. VIII.

Davis Wilson, the eldest son of Martha Wilson, who gave his age as about fifty-five (55), but who was quite indefinite as to dates, testified that he and his mother and her husband, Abner Wilson, had lived on the Abner Wilson tract (Lot No. VI) ; that while they were all living there together he had bought the tract from a Mr. Cooper, who "had gotten hold of it"; that about April 1, 1922, he had paid off the mortgage held by S. Poston & Company, that had been given by his mother, Martha Wilson, in 1910, covering her then undivided interest in the whole tract, and that in consideration of this payment by him, which amounted to something over Seven Hundred ($700.00) Dollars,

and of a subsequent payment, she had signed in 1933 a deed conveying Lot No. II to him, but the deed had never been completed. He testified also that he had put a two-room house on Lot No. II, and that thereafter the house in which his mother and her husband were living on the Abner Wilson tract (Lot No. VI) had burned, and he had permitted his mother and Abner Wilson to move his house over to that tract; that this had occurred before he went away "up north"; that he returned some twenty (20) years prior to the commencement of the present action and has been in exclusive possession of Lots II and VI ever since. He did not know anything about the agreement for partition in 1913, but he remembers the plat that was made in 1913, and that it had been in the possession of Kelley Thomas.

Cyrus Brown, who had married Annie, the daughter of Hager James, and who gave his age as sixty-four (64) or sixty-five (65), testified that he remembered distinctly the survey that was made in 1913, and that he had "helped tote the chain" in connection with it, along with Jake Johnson and Abner Wilson (both of whom are now dead) and Henry Wilson, to whose testimony we shall later refer. Cyrus testified positively that immediately or shortly after the survey had been made, the three living children of Moses and Clander Davis, and the heirs of the three children who had theretofore died, went into possession in severalty of their respective portions of the land, according to the survey; that Martha Davis Wilson went into possession of her part and continued in possession of it until she turned it over to her son, Davis Wilson; that the heirs of Sarah James went into possession of their part; that the witness and his wife, Annie, and the other heirs of Hager James took over the part allotted to the Estate of Hager James and have continued to farm it since; that Della Davis' heirs took possession of the part allotted to them; and likewise as to Mary Cooper and Amelia Smith. He testified that during all the time he had been on the property he had never heard of

any disagreement among the heirs as to the location and separate ownership of the several lots.

Henry Wilson, who was not a party, and who claims no ownership of any of the land, but who was about sixty-four (64) years of age and had been raised on the adjoining property and had lived in the neighborhood all of his life, testified that he had also taken part in the survey in 1913, and helped carry the chain, and that after the survey had been made the surviving children of Moses and Clander Davis and the children of those who had died, had gone into possession of their separate tracts as set off to them in the survey; that there had been no disagreement among them; and that the separate ownership and use has continued from that time.

Kelley Thomas, one of the defendants, who is a child of Sarah C. Thomas, a daughter of Mary Davis Cooper, testified that when he was about eight (8) years old his mother had given him to Amelia Smith, who was her childless and widowed aunt; that Amelia Smith farmed her part, Lot No. VIII, until her death, and that he, Kelley Thomas, has been farming it ever since, along with Ned Brown, who farms about an acre of it in return for allowing Kelley Thomas to farm part of his land.

Joseph James, a son of Hager James, explained that in the partition in 1913 the 4.6 acre tract shown on the map as Lot No. VII was, in addition to Lot No. III, allotted to Hager James, and that it was agreeable to him and the other heirs of Hager James that Cyrus Brown and his wife, Annie, who was Hager James' daughter occupy that lot.

It is to be noted that the only witness who testified to the effect that the oral partition had not been agreed upon was not a party in interest, either plaintiff or defendant, but a Mr. P. A. Thompson, the owner of some adjoining property. His testimony, which is discussed in Judge Brailsford's decree, is vague and unconvincing in view of the positive testimony of the interested parties to which we have referred.

Appellants argue that the following facts disclosed by the record are sufficient to overthrow the otherwise convincing testimony of the parties that the oral partition in 1913 was in fact consummated:

1. That the property as a whole has been carried on the tax books of Williamsburg County in the name of Estate of Clarinda Davis;

2. That in 1943, when James Davis and Fulton Davis, two of the numerous heirs of Della Davis, conveyed their interests to Mose Wilson, the property conveyed was described as the undivided right, title and interest of the grantors in "192 acres, more or less, said tract being estate lands of Clander Davis"; and

3. That in 1943, the deed from Clara E. James, one of the grandchildren of Hager James, to Thelma Wilson described the property conveyed as the undivided right, title and interest of the grantor in "221 acres, more or less, said tract of land being estate lands of Clarendon Davis or Clander Davis, formerly of lands of Estate of Moses Davis."

The fact that the tax records were not changed to show ownership of the allotted parcels in severalty becomes relatively unimportant when it is remembered the parties concerned in the 1913 partition and thereafter were obviously not versed in such matters, and were content, if indeed they thought about the matter at all, to leave the tax records alone. Nor does the description in the two deeds referred to impel the conclusion that the oral partition had never been consummated. There is no evidence indicating that the parties to these deeds had ever seen the partition plat, which was in the possession of Kelley Thomas; and these grantors may not have even known of the partition, though the testimony shows that since the division of the property in 1913, they, like the other descendants of Moses and Hager, had never questioned the separate ownership of the several lots. The validity of the oral partition is to be determined by the actions of the parties to it.

We are convinced, after careful study of all the evidence, that the oral partition was in fact consummated, and is binding upon those now claiming under the parties among whom it was made.

Judge Brailsford's decree goes no farther than to confirm the oral partition, recognizing that the allotment to the heirs of Hager James included both Lot No. III and Lot No. VII. It is expressly without prejudice to any rights that any of the parties may have acquired in any of the tracts since the oral partition, by inheritance, conveyance or otherwise. His decree, is affirmed, and the cause is remanded to the Court of Common Pleas for Williamsburg County, there to remain open for the purpose of enabling any of the parties, as tenant or tenants in common of any of the several parcels shown thereon, to apply for such relief as he or she or they may be advised.

Affirmed and remanded.

STUKES, TAYLOR and OXNER, JJ., and E. H. HENDERSON, Acting Associate Justice, concur.