17354

D. L. SCURRY, WADE H. GREENE, JR., MARVIN L. BAGWELL, MARION J. YOUNG and LENA P. YOUNG, Plaintiffs-Respondents, v. JAMES M. EDWARDS and WILLIAM M. EDWARDS, as Committee for James M. Edwards, Defendants, of whom James M. Edwards, by his Guardian Ad Litem, is Appellant

(100 S. E. (2d) 812)

*Hubert E. Nolin, Esq.,* of Greenville, *for Appellant,* 

*C. Victor Pyle, Esq.,* of Greenville, *for Respondents,* 

November 20, 1957.

LEGGE, Justice.

This is an action to quiet title to real estate. In controversy is a deed executed in 1946 by the committee of a person *non compos mentis,* purporting to convey his fractional interest in the property; and from a decree adjudging this

deed valid the incompetent, by his guardian *ad litem,* now appeals.

Vance Edwards died intestate on February 8, 1946, leaving as his heirs his brothers William S., Robert J., and James M. Edwards, and eight nieces and nephews, children of a predeceased brother, F. M. Edwards. Decedant's brother James M. Edwards, now seventy-nine years of age and unmarried, has been *non compos mentis* all of his life.

At the time of his death Vance Edwards owned a tract of some seven hundred acres in Greenville County, most of it lying on the southeastern side of U. S. Highway 29. A small portion of it lay on the northwestern side of said highway and adjoined property of his brother Robert J. Edwards. By deed dated September 24, 1946, recorded in Greenville County in Deed Book 307, at page 33, the heirs of Vance Edwards other than Robert J. Edwards conveyed to the said Robert J. Edwards, for $1,400.00:

1. A small triangular lot on the northwestern side of Highway 29 at its intersection with Artillery Road and adjoining the property of Robert J. Edwards upon which he had built his home; and

2. A triangular lot containing one and one-half acres at the intersection of Highway 29 and Lee Road, almost directly across the highway from the home of Robert J. Edwards.

We shall refer to the lot first mentioned as the Artillery Road lot, and to the other as the Lee Road lot.

At the time of this conveyance Robert J. Edwards was the duly appointed committee of his brother James M. Edwards, and he joined in the conveyance in that capacity.

The Lee Road lot was conveyed by Robert J. Edwards to the plaintiffs D. L. Scurry, Wade H. Greene, Jr., and Marvin L. Bagwell by two deeds, one dated August 29, 1952, conveying part, and the other dated August 27, 1953, conveying the rest of it. Thereafter this lot appears to have been divided into two lots, of which Lot No. 1, in that por-

tion of the triangle immediately adjacent to the intersection of Highway 29 and Lee. Road, was conveyed to the plaintiffs Marion J. Young and Lena P. Young by deed dated October 21, 1955. The plaintiffs Scurry, Greene and Bagwell retained ownership of the rest of the triangle, now known as Lot No. 2.

A prospective purchaser of Lot No. 2 having questioned the title for the reason that no order of court could be found authorizing Robert J. Edwards as committee of James M. Edwards to join in the execution of the deed of September 24, 1946, this action resulted.

The factual background appears from the following testimony of James L. Love, Esq., a prominent member of the Greenville bar:

Mr. Love has represented the Edwards family since about 1925, handling all sales of property made by B. Perry Edwards (an older brother of Vance, Robert and James), who died prior to 1944, all sales made by Vance Edwards, and all sales of the property of James M. Edwards. B. Perry Edwards had been committee of James M. Edwards; upon his death Vance and Robert were appointed in his stead; and after the death of Vance in February, 1946, Robert continued to act as such committee until his death (which, we infer, occurred subsequent to August 27, 1953).

In the division of the lands of B. Perry Edwards, Vance had received a tract lying for the most part southeast, and Robert a tract lying northwest, of what is now Highway 29. In 1944 Vance and Robert orally agreed, in Mr. Love's office, that they would exchange segments of certain lots on Artillery Road, Vance conveying to Robert two parcels of Lots 14 and 15, and Robert conveying to Vance the major portion of Lot 16; and that, as part of the same transaction, Vance would sell to Robert for $1,400.00 the two triangular lots hereinbefore referred to as the Artillery Road lot and the Lee Road lot. By the cross-conveyance of the portions of Lots 14, 15 and 16, Vance and Robert would each acquire

ownership of whole lots as shown on the existing plat of the property. The conveyance of the Artillery Road lot to Robert was necessary to provide an entrance from the highway to his home, which was then under construction. The conveyance to him of the Lee Road lot was desired to afford protection against the possibility that objectionable business establishments might be erected directly in front of his new home.

Pursuant to this agreement, Mr. Love prepared two deeds, both of which were executed under date March 9, 1944, to wit:

(1) Deed of Vance Edwards to Robert J. Edwards, conveying two parcels or segments of Lots 14 and 15; and

(2) Deed of Robert J. Edwards to Vance Edwards, conveying the major portion of Lot 16.

At this time the two triangular lots had not been "surveyed off" and it was not until some time later that Mr. Love, at the instruction of Mr. Vance Edwards, and "in order to complete the oral agreement", prepared the deed from Vance to Robert covering these lots. However, because of the illness of Mr. Vance Edwards, from which he did not recover, this deed was never signed by him. After his death, Mr. Love having prepared a deed for execution by the other heirs of Vance Edwards conveying the two triangular lots to Robert, and having explained to some of them the agreement between Vance and Robert, they all executed the deed now in controversy, Robert, as before stated, executing it as committee of James M. Edwards. About the same time, Mr. Love also prepared and the heirs of Vance Edwards executed (Robert signing as committee of James) a deed conveying to J. A. Sammons Lot No. 16, which Vance Edwards had agreed to convey to him, but for which he had not executed a deed.

At the time of his accounting for the purchase price paid by Robert, Mr. Love had in his possession $5,000.00, representing the proceeds of the sales of three pieces of property formerly owned by Vance Edwards, as follows:

Property conveyed by Vance Edwards to Plastic-
built Corporation ..........................$3,000.00
Property conveyed by heirs of Vance Edwards to
J. A. Sammons .......................... 600.00
Property conveyed by heirs of Vance Edwards to
Robert J. Edwards ...................... 1,400.00

$5,000.00

After deducting from this figure expenses amounting to $22.75, there remained for distribution among the heirs $4,977.25, of which the share of James M. Edwards, one-fourth, was $1,244.31. In evidence is the check of Mr. Love's firm, dated September 20, 1946, in the amount of $1,244.31, drawn to the order of Robert J. Edwards as committee for Jas. M. Edwards, and bearing the notation: "Re: Vance Edwards, Sale of Lots". This check bears the endorsement of "Rob't J. Edwards, Comm. for Jas. M. Edwards", and perforation showing payment by the drawee bank on October 14, 1946. Also ·in evidence is a deposit slip showing a deposit in another Greenville bank on October 10, 1946, to the credit of Rob't J. Edwards, Comm. for Jas. M. Edwards, of a check for $1,244.31, noted on the deposit slip as "Estate Real Estate, Lots v. Edwards".

In connection with the conveyance by the heirs of Vance Edwards to J. A. Sammons an order of court was taken authorizing its execution by Robert J. Edwards as committee of James M. Edwards. Similar orders were taken with respect to other conveyances of properties of James M. Edwards, both before and after the death of Vance Edwards.

Mr. Love testified that when the deed of September 24, 1946, was questioned by the prospective purchaser of Lot No. 2 of the Lee Road lot he was sure that an order of court had been taken authorizing Robert as committee of James to join in its execution; but that he has been unable to locate any such order.

In June, 1947, a suit was instituted by all of the other heirs of Vance Edwards against James M. Edwards and his committee, for the purpose of partitioning in kind all of the real estate owned by Vance Edwards at the time of his death. In that suit a plat of the properties showing the allotments agreed upon was before the court and, the court being satisfied from the testimony that the tracts allotted to James M. Edwards, aggregating 125.80 acres, represented a full one-fourth of the value of the estate, a decree of partition was accordingly issued. On the plat just mentioned the Artillery Road lot and the Lee Road lot were shown as having been sold to Robert J. Edwards; and the testimony in the partition suit was to the effect that the lands proposed to be divided were all of the lands belonging to the estate of Vance Edwards, and that the lot with which we are now concerned was not property of the said estate.

The value of land in this vicinity has greatly increased in recent years. The consideration paid by Scurry, Greene and Bagwell to Robert J. Edwards for the portion of the Lee Road lot conveyed by the deed of August 29, 1952, was $10,000.00; and for the remainder of the lot (conveyed by the deed of August 27, 1953) $10,000.00. But there was ample evidence that at the time of the agreement between Vance and Robert Edwards in 1944, and also at the time of the conveyance to Robert by the other heirs of Vance in 1946, $1,400.00 represented the full fair market value of both that lot and the Artillery Road lot.

Mr. Love's testimony concerning the oral agreement between Vance and Robert Edwards was objected to by appellant's counsel as contravening the statute of frauds, which had been duly pleaded. The trial judge, sitting as chancellor, received this testimony subject to the objection, and in his decree held, properly we think, that the statute did not govern because the oral agreement had been partly performed.

The general rule is well settled that sufficient part performance of a parol contract for the conveyance of real estate will, in equity, remove the contract from

the operation of the statute. 49 Am. Jur., Statute of Frauds, Section 419, p. 723. And we have repeatedly held, with regard to oral agreements for partition, that actual possession is the most satisfactory evidence of part performance. *Kennemore v. Kennemore,* 26 S. C. 251, 1 S. E. 881; *Wilson v. Cooper,* 226 S. C. 538, 86 S. E. (2d) 59. So also will the courts require specific performance of an oral contract for the conveyance of land, where the terms of the contract are clear, definite and certain and are established by competent and satisfactory proof, and where the party seeking to rescue it from the statute shows such acts of performance or part performance on his part, clearly and unequivocally referable to such agreement, as would render application of the statute unconscionable. *Crawford v. Crawford,* 77 S. C. 205, 57 S. E. 837; *White v. Felkel,* 222 S. C. 313, 72 S. E. (2d) 531. Payment of the purchase price in whole or part is not of itself regarded as such part performance as will take the contract out of the statute, *Mims v. Chandler,* 21 S. C. 480; and the fact that no part of the purchase price has been paid does not necessarily require application of the statute. 49 Am. Jur., Statute of Frauds, Section 435, at page 741; *Shaughnessy v. Eidsmo,* 222 Minn. 141, 23 N. W. (2d) 362, 166 A. L. R. 435. Mere change of possession is not necessarily sufficient to avoid the consequences of the statute; like payment of the purchase price, it is a fact to be considered in connection with other facts and circumstances of the transaction in determining whether or not there has been such performance or part performance as warrants relief from the statute. 37 C. J. S. Frauds, Statute of, § 252, pp. 766, 767. Likewise, the fact that improvements have been made on the property after possession, while strong evidence of part performance, is neither conclusive of that issue nor indispensable proof of it. *Carson v. Coleman,* 208 S. C. 406, 38 S. E. (2d) 147; *Aust v. Beard,* S. C., 96 S. E. (2d) 558.

"The origin of the doctrine of the part performance as applied to permit the specific performance of an oral contract for the sale of real estate may be traced to a rule of

equity which, antedating the English statute of frauds, required as a prerequisite of the enforcement of parol contracts concerning land that the plaintiff show that the contract had been partly performed, or that he had so altered his position in reliance on the agreement that a refusal to enforce it would amount to a fraud upon him". 49 Am. Jur., Statute of Frauds, Section 420, p. 724.

But, as this court pointed out as early as 1825, in *Thomson v. Scott,* 1 McCord Eq. 32, 6 S. C. Eq. 32, and as late as 1957 in *Aust v. Beard, supra,* the doctrine has not always been clearly stated. *Shaughnessy v. Eidsmo,* Minn. 1946, *supra,* quotes Dean Pound's explanation of the apparent confusion in the decisions, as follows [222 Minn. 141, 23 N. W. 367] :

"It is important to insist that the taking of cases out of the statute is a historical anomaly, only to be understood by reference to seventeenth-century and eighteenth-century legal institutions and modes of thought in equity and that, like all historical anomalies of the sort, it defies logically satisfactory analytical treatment.

" 'What is the actual situation? We say that for the purposes of courts of equity, cases are taken out of the purview of the statute in either of two ways: by fraud *or* by part performance. Recently there has been a tendency to run the two together, largely under the influence of Pomeroy's doctrine of "equitable fraud." But they had an independent origin and have developed along independent lines. Hence they call first for independent consideration.' (Italics supplied.) * * * 'Before a decade had passed after its (the statute of frauds) enactment, the Court of Chancery began to take cases out of the operation of the statute where purchaser had been put in possession under the contract. Sugden (Vendor and Purchaser, 14 Ed. 152, note p) long ago called attention to some old cases which indicate that this was the result of ideas as to livery of seisin. *Putting the purchaser in possession was taken to be the substance of a common-law conveyance.* The rule thus derived became established in Eng-

land and in a majority of American jurisdictions. But its original basis was soon overlooked and attempts to rationalize the subject led writers and courts to turn to the idea of "fraud" in order to make a reasoned doctrine of "part performance" on the basis of the old cases where the chancellor had dispensed with the statute. Different developments of this idea gave rise to many varieties of doctrine. Thus we get today cases taken out by possession alone; cases taken out by possession coupled with something else, arbitrarily prescribed by judicial decision or by statute; cases taken out by possession when joined to circumstances of great hardship upon purchaser; cases of part performance other than by taking possession, where there are acts solely referable to a contract as to the very land or showing a change in the character of the preexisting possession; and cases where it is not possible to take possession but relief is given on a theory of fraud or of irreparable injury to purchaser, without more' ". (Italics supplied.)

The author of the opinion in *Shaughnessy v. Eidsmo* also quotes Samuel Williston, under whose direction Restatement, Contracts, Paragraph 197, was drafted, as having stated in his Commentaries on Contracts, Restatement No. 4:

"Courts of equity early adopted the doctrine that such acts as the taking of possession, making of improvements, and the like by the purchaser with consent of the vendor make the contract enforceable though there is no written memorandum. This doctrine has been rested upon two main reasons: (1) that the rule of the Statute of Frauds is an evidential rule and that any acts clearly and solely referable to the existence of the contract satisfy in equity the purpose of the Statute; (2) that equity should relieve against the operation of the Statute in cases where it would be unconscionable for the vendor to rely upon it in defense".

See also the very full annotation in 101 A. L. R. 923 *et seq.,* and the comment note following *Shaughnessy v. Eidsmo,* in 166 A. L. R. at page 443.

*Thomson v. Scott, supra,* was a partition suit, and the question there was whether a tract of land which a testator, under oral agreement, had purchased and taken possession of prior to the making of his will, but for which he had received no written conveyance until after the will had been executed, passed under the will or as intestate property. No issue of fraud was involved. To quote from the opinion:

"I admit that it is now a settled equity doctrine that when the parol contract is admitted or proved and has been carried into execution on one part as far as the party claiming the benefit of it can carry it into effect, that a Court of Equity may compel a performance of it on the other side. But this doctrine is directly in the face of the statute of frauds, and ought not to be extended by judicial legislation. I concur in the opinions expressed by Lord Eldon and Lord Redesdale, that we ought not to go further on that subject than we are compelled by former decisions * * *. The ground upon which Courts of Equity thought themselves authorized to compel the performance of a parol contract for the sale of lands is, that the object of the statute was to prevent fraud, and they would not give it such a construction as to enable a person to effect the very object which the statute was intended to prevent. The cases on this subject are somewhat contradictory, and do not appear to me to define, with the precision which is desirable, the rule by which the courts ought to be governed. But I think from the spirit of them, as far as they have come within my observation, the following requisites will be found necessary to authorize the interposition of a Court of Equity to compel a specific performance:

"1st. That it must be clearly shown what the agreement was;

"2nd. That it has been partly carried into execution on one side, with the approbation of the other; and

"3rd. That the party who comes to compel a performance must show that he has performed on his part, or that

he has been, and still is, able and willing to perform his part of the contract".

In *Anderson v. Chick,* 1830, Bailey Eq. 118, 8 S. C. Eq. 118, the Chancellor's decree, which was affirmed in result only, held: (1) that payment by the vendee of an execution against the vendor did not entitle the latter to specific performance of an oral contract for the sale of land; and (2) that although delivery of possession is sufficient performance to take the contract out of the statute, such is not the case where the vendee takes possession as agent of the vendor and as such agent rents the land to a third person, for such possession does not purport to be in pursuance and execution of the oral agreement.

In *Massey v. McIlwain,* 1836, 2 Hill Eq. 421, 11 S. C. Eq. 421, the court, citing *Thomson v. Scott, supra,* declared that in the enforcement of specific performance of parol contracts for the sale of lands the courts have proceeded upon the ground that to permit the statute to shelter one who had accepted performance of the parol contract would "enable him to practise a fraud at least as odious as that which the statute was intended to prevent, and thus render the statute an instrument of fraud"; and thereupon held that delivery of possession, the marking out of a dividing line between the lands of the parties to the contract, and the payment of the purchase price, satisfied "the rigid proof which is required of the terms of the contract, and the fact of partial performance". The issue involved in the *Massey case* was not fraud, but whether possession under the parol contract was sufficient notice to subsequent judgment creditors of the vendor to protect the purchaser against a sale of the land under execution.

In *Mims v. Chandler,* 1884, 21 S. C. 480, *supra,* where it was found as a matter of fact that the purchaser had gone into possession pursuant to an oral agreement, had cleared, drained and ditched part of the land, and had paid part of the purchase price, the court held that there had been such part performance as would take the contract out of the stat-

ute. To the same effect are *Roberts v. Smith,* 1884, 21 S. C. 455, and *Sweatman v. Edmunds,* 28 S. C. 58, 5 S. E. 165.

In *Watts v. Witt,* 1891, 39 S. C. 356, 17 S. E. 822, 826, fraud on the part of the vendor was involved. There, the purchaser having taken possession under a parol agreement for its conveyance to her upon her making full payment, and having afterwards made such payment in full, the vendor fraudulently conveyed the property to another for the purpose of defeating her right to specific performance. The court, declaring this deed void, said:

"What is such part performance of a verbal agreement for the sale of land as will be sufficient to take the case out of the statute, is a question upon which much has been said in the various cases in which the question has arisen, and it must be admitted that there is no little conflict of opinion upon the subject. The doctrine that part performance of a verbal agreement for the sale of real estate will take a case out of the operation of the statute of frauds, is a creature of the court of equity, and rests upon the ground of equitable fraud, (3 Pom. Eq. Jur., § 1409) or, as it is said in some of the cases, a court of equity will not permit a statute designed to prevent frauds to be used as an instrument to effect a fraud. Without undertaking anything like a review of the cases, it is sufficient for us to say here that we think the rule upon the subject is well stated in a note to 8 Am. & Eng. Enc. Law, at pages 742, 743, upon the authority of *Bechtel v. Cone,* 52 Md. 698, and *Rook v. Jimeson,* 67 Iowa 202, 25 N. W. 129, in the following language: 'Where everything has been done on both sides, save the mere delivery of the deed, so that the holder of the legal title has become a bare trustee, equity will compel the delivery' ".

*Workman v. Copeland,* 117 S. C. 214, 108 S. E. 922 (republished as corrected in 110 S. E. 526, 531), was concerned with a tenant's contention that his possession of a store was under a parol lease for a five-year term, enforceable because of part performance. The lower court held against this contention, for the reason that the tenant's pos-

session and payment of monthly rental were referable to a legal lease for one year and afforded no basis for a claim of part performance of a parol contract for a five-year lease. On appeal this judgment was affirmed in a very brief opinion that went no further than to say that there had been no agreement for a written lease, and that the claimed parol lease for a five-year term was void because of the statute. In a dissenting opinion, Mr. Justice Cothran expressed the view that there had been sufficient part performance to take the case out of the statute, and in his discussion of the authorities quoted 25 R. C. L. 567 as follows:

"The usual ground on which courts of equity interfere in case of oral leases as to which there has been part performance is that equity will not permit the statute to operate as an engine of fraud, or, in other words, that it will interfere for the purpose of preventing the injustice which would arise from permitting a party to escape from the obligations of his agreement, where the other party, on the faith of such agreement, has in presumptively good faith acted in execution thereof".

In *McMillan v. King,* 193 S. C. 14, 7 S. E. (2d) 521, 525, the decree of the circuit judge, affirmed here, expressed the rule thus:

"The doctrine of part performance usually involves a showing that the party claiming land under an oral agreement went into possession of the land and made improvements thereon, or went into possession and thereafter made payments to the former owner on account of the purchase price. The doctrine doubtless includes many other states of fact, but it is founded largely on the doctrine of estoppel, and is founded on the equitable purpose to prevent a contractor under an oral agreement from getting the pecuniary benefit of an agreement to convey, without carrying out the agreement, and preventing the imposition of a serious loss to the purchaser of the property who in reliance upon an oral agreement has paid or expended money in reliance on his purchase".

From our cases above referred to it would seem that their divergence is superficial rather than basic, relating to the definition, not the substance, of the doctrine. Essentially, they all rest upon the principle of equitable estoppel, which requires that the party sought to be charged upon a parol contract for the sale of land be denied the protection of the statute where the other party has done such acts in pursuance of and reliance upon the contract that its application against his claim would be unconscionable.

In the light of these principles, we think that the evidence in the instant case was sufficient to warrant the finding by the trial judge that there had been such part performance of the oral contract between Vance and Robert Edwards as removed it from the operation of the statute. Appellant, conceding that pursuant to the oral agreement Robert went into actual and active possession of the Artillery Road lot, suggests that there were no such acts of possession with regard to the Lee Road lot as would warrant the finding of part performance of the contract relating to it. But acts of ownership by the purchaser of real estate should, we think, be evaluated in the light of the purpose for which the land is acquired; and the uncontroverted evidence shows that Robert desired the Lee Road lot not for immediate improvement, but for the protection of the home that he was building, against undesirable neighbors. Appellant's argument is based upon the premise that there were three oral contracts, one for the purchase and sale of the Artillery Road lot, another for the purchase and sale of the Lee Road lot, and another for the exchange of segments of Lots 14, 15 and 16. But the testimony of Mr. Love fully supported the trial judge's finding that there was a single oral contract. The facts thus readily distinguish this case from *Humbert v. Brisbane,* 25 S. C. 506.

It must be borne in mind that the vital issue here is the validity of the oral contract between Vance and Robert Edwards in 1944. The conveyance by the heirs of Vance to Robert in 1946 was merely confirmatory

of that contract. We need not speculate upon whether the conveyance of the incompetent's interest by the 1946 deed, considering that deed as an independent transaction, would have been approved by the court had such approval been sought. But we point out, in passing, that it is a firmly established general rule that a guardian has no authority to sell real estate of his ward without an order of court, and that the courts will subject to the most rigid scrutiny a transaction whereby a guardian purchases or otherwise acquires his ward's property. 25 Am. Jur., Guardian and Ward, Sections 124, 208, 210, pp. 78, 130, 131; 39 C. J. S. Guardian and Ward §§ 82, 128, pp. 128, 209; *Moore v. Hood,* 9 Rich. Eq. 311, 30 S. C. Eq. 311, 70 Am. Dec. 210; *McDuffie v. McIntyre,* 11 S. C. 551. *Cf. Erwin v. Patterson,* 229 S. C. 188, 92 S. E. (2d) 464.

In the case before us, partial performance having removed the bar of the statute, the oral contract was good as between Vance and Robert, and the latter could have compelled specific performance by the former. Robert's rights under that contract were enforceable, after Vance's death, against his heirs. 49 Am. Jur., Specific Performance, Section 147, p. 170; *Kirkpatrick v. Kirkpatrick,* 223 S. C. 357, 75 S. E. (2d) 876. We are satisfied, under the facts as found by the trial judge, that had application been made to the court at the time of the 1946 conveyance, joinder in that conveyance by a proper representative of the incompetent's interest in the property, or comparable relief, would have been ordered.

We are unable to agree with the trial judge in his view that, as against James' present objection, partial performance or ratification of the oral contract may be inferred from the fact that the price paid by Robert to the estate of his incompetent brother (whose committee he was) represented the fair value of the incompetent's interest at that time (1946), or from the fact that in the later partition suit (in which Robert appeared as his brother's committee) the parties did not regard the lots in question as part of Vance Edwards' estate. The deed, being without

judicial sanction, was ineffectual to transfer the incompetent's interest; and, by the same token, neither part performance nor ratification is inferable from Robert's payment of the proportionate part of the purchase price to himself as his brother's committee. Nor do we construe Robert's appearance as such committee in the partition suit as having effected ratification of that contract. In short, validity of the title in Robert and in those who now claim under him must rest, not upon those ineffectual events after the death of Vance, but upon the validity of the oral agreement between Vance and Robert in 1944, and upon the salutary and well-recognized rule (upon which the trial judge also based his decree) that if what the parties have attempted to do would have been ordered by the court at that time, had application for such order been then made, the court may later confirm such action by its judgment in an appropriate proceeding. *Ryan v. Bull,* 3 Strob. Eq. 86; *Shumate v. Harbin,* 35 S. C. 521, 15 S. E. 270; *Hammassapoulo v. Hammassapoulo,* 134 S. C. 54, 131 S. E. 319; *Pickett v. Geer,* 156 S. C. 346, 153 S. E. 349.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.