0984

Isla M. GRAHAM, Executrix of the Estate of Billy E. Graham, Appellant v. Roger D. PRINCE, Respondent.

(358 S. E. (2d) 714)

Court of Appeals

*R. Wayne Byrd*, of *Scott & Byrd, P.A., John S. Wilkerson, III*, and *Edward W. Laney, IV*, of *Turner, Padget, Graham & Laney, P.A.*, Florence, *for appellant.*

*E. LeRoy Nettles*, Lake City, *for respondent.*

Heard April 20, 1987.

Decided July 6, 1987.

BELL, Judge:

Billy E. Graham commenced this action in equity seeking satisfaction and discharge of a mortgage held by Roger D. Prince on lands of Graham in Olanta, South Carolina. Graham also sued for the balance alleged to be due on a promissory note executed by Prince in the principal sum of $185,000.00. Prince denied any duty to satisfy the Olanta mortgage and counterclaimed to foreclose it. He also alleged payment of the promissory note. The circuit court gave judgment for Prince on Graham's claims. On the counterclaim, the court ruled that Prince was entitled to foreclose the Olanta mortgage in a separate proceeding. Graham appeals. We affirm.

Graham is a landowner and farmer. Prior to 1980, he had become indebted to Prince for substantial sums of money. In March 1980, he and Prince worked out an arrangement under which Graham would convey certain timber rights to Prince to secure both the then outstanding indebtedness and future advances from Prince up to $185,000.00. If Graham repaid the past and future indebtedness by January 1, 1981, Prince would reconvey the timber to him. Otherwise, Prince would sell it to recover his money.

On March 24, 1980, Graham and Prince executed an agreement, timber deed, and timber option which was modified in writing on May 21, 1980. The deed conveyed certain timber

to Prince with a general warranty clause. By its terms, the timber deed expired on March 24, 1983.

The written agreement specified a total consideration of $290,000.00 for the conveyance, consisting of the forgiveness of $105,000.00 of preexisting debt owed by Graham to Prince and a promissory note from Prince to Graham for $185,000.00. Of the preexisting debt, $50,000.00 was represented by an outstanding note from Graham to Prince secured by the aforementioned mortgage on Graham's Olanta property.

The written agreement and timber option gave Graham the right to repurchase the timber until January 1, 1981. If Graham exercised the option, Prince was obligated to reconvey the timber free of all encumbrances except those in existence on March 24, 1980. If Graham did not exercise the option, the agreement obligated Prince to execute a satisfaction of the note and mortgage on the Olanta property when the option expired. The $185,000.00 promissory note would also become due and payable on January 1, 1981, if Graham did not exercise the option. However, the agreement entitled Prince to credit on payment of the note for advances made by him to Graham for tobacco allotments and farm supplies.

Graham did not exercise the option before January 1, 1981. As of that date, Prince had advanced a total of $173,568.92 to Graham for farm supplies and tobacco allotments. In addition, Prince had paid a $17,850.00 debt of Graham to the Small Business Administration on July 3, 1980, to obtain the release of a mortgage Graham had placed on the timber in 1978.

In May 1981, Prince sold most of the timber to Georgia Pacific for $247,469.00. When he contracted with Georgia Pacific, Prince reserved three parcels of timber and certain standing hardwood near Graham's house. He later sold other timber, which Georgia Pacific was unwilling to purchase, to an independent logger for $10,000.00. From the proceeds of sale, Prince paid a $29,628.00 debt of Graham to C. A. Smith to obtain the release of a preexisting mortgage Graham had placed on the timber.

Prince never satisfied the mortgage on the Olanta property as specified in the written agreement. Neither did he pay the promissory note. In October 1984, Graham made

written demand on Prince to satisfy the mortgage. Prince refused, and this suit followed.

Prince relies on three oral agreements he claims to have made with Graham after the written agreement was executed. In essence, Prince alleges Graham agreed to relieve him of his obligation to satisfy the Olanta mortgage and also guaranteed him no loss on the sale of the timber should the repurchase option not be exercised. In return, Prince agreed to extend the option period to April 1, 1981, and to reserve the three parcels of timber and the hardwood near Graham's home. Prince testified that he fully performed his part of these oral agreements.

The circuit judge found that Graham and Prince had, in fact, made the subsequent oral agreements and that Prince had performed. He, therefore, concluded Prince was not obligated to satisfy the Olanta mortgage. Moreover, he held Prince was entitled to credit for expenditures exceeding the face amount of the $185,000.00 promissory note, so that nothing remained due on that note. The evidence supports these fact findings.[1]

The sole question before us is whether the court erred in considering the subsequent oral agreements. Graham argues the Statute of Frauds bars Prince from enforcing oral agreements relating to the sale of standing timber.

Section 32-3-10, Code of Laws of South Carolina, 1976, provides in pertinent part:

> No action shall be brought whereby:
>
> \* \* \* \* \* \*
>
> (4) To charge any person upon any contract or sale of lands, tenements or hereditaments or any interest in or concerning them;

---

[1] Under the terms of the written agreement, Prince would owe Graham a balance of $11,431.08 on the promissory note and would have a further obligation to satisfy the Olanta mortgage worth $50,000.00. In other words, Prince's total obligation to Graham would be $61,431.08.

Under the oral agreements, since the sale of timber netted no more than $209,991.00 after deducting the amounts paid to release it from preexisting liens, Prince suffered a loss of at least $80,009.00 when compared to the $290,000.00 consideration for the timber deed. Under the oral agreements, Graham would be obligated to make this loss good. Deducting from this loss the amounts Prince still owes under the written agreement, Graham's net obligation to Prince would be at least $18,577.92.

* * * * * *

Unless the agreement upon which such action shall be brought ... shall be in writing and signed by the party to be charged therewith....

Both parties concede that the oral agreements in dispute concerned an interest in land subject to the Statute of Frauds. *See also Alexander v. Herndon,* 84 S. C. 181, 65 S. E. 1048 (1909) (growing timber is an interest in land subject to the Statute of Frauds). The circuit court held, however, that the oral agreements were removed from the operation of the Statute by full performance on the part of Prince. Graham asserts this holding is erroneous as a matter of law under the principle that mere nonaction is not performance sufficient to take a parol contract out of the Statute of Frauds. Citing *Southern States Life Insurance Co. v. Foster,* 229 F. (2d) 77 (4th Cir. 1956), and *Alodex Corp. v. Brawner,* 134 Ga. App. 630, 215 S. E. (2d) 527 (1975),[2] he argues that the alleged "performance" by Prince consisted of nothing more than a forebearance — that Prince actually did nothing. Thus, Graham contends, the agreements had to be in writing to be enforceable.

We readily acknowledge the rule Graham invokes. It is, however, not applicable to the facts of this case.

An oral contract within the Statute of Frauds may be taken out by performance where one party does some act essential to performance of the agreement resulting in loss to himself and benefit to the other. *Scurry v. Edwards,* 232 S. C. 53, 100 S. E. (2d) 812 (1957). However, inaction by one party which results in no loss to him or benefit to the other will not remove a parol agreement from the Statute. While mere forebearance may be good consideration to support an oral promise, it is not performance which will exempt a parol agreement from the Statute of Frauds, because it does not enrich the other party at the expense of the passive party and for that reason does not in law imply an obligation by the other party to perform his agreement or estop him to deny it. *Southern States Life*

---

[2] *Alodex Corp. v. Brawner* was overruled by *Brack v. Brownlee,* 246 Ga. 818, 273 S. E. (2d) 390 (1981).

*Insurance Co. v. Foster, supra; Scurry v. Edwards, supra.* In this case, Prince's performance of the oral contract ■ did result in a loss to him and a benefit to Graham. In execution of the oral agreements, Prince gave up valuable timber which he had a right to sell, and when the timber deed expired, title reverted to Graham. Thereby, Prince suffered a loss of the money the timber would have brought at sale and Graham received back valuable standing timber belonging to Prince under the timber deed. These facts do not present a case of mere inaction which results in no loss to one party and no benefit to the other. Therefore, they do not come within the rule on which Graham relies. The circuit court was correct to hold the agreements were removed from the Statute of Frauds by performance.

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.