16309

FOREST LAND CO. v. BLACK *ET AL.*

(57 S. E. (2d) 420)

*Messrs. E. W. Mullins and Harold C. Seigler,* of Columbia, *for Appellants,*

*Messrs. Tompkins, Tompkins & McMaster,* of Columbia, *for Respondent,*

January 13, 1950.

FISHBURNE, Justice.

The defendants, E. O. Black, Jr., and Mrs. Lillian Black, appeal from a decree of the circuit court of Richland County permanently enjoining them from the use or operation of a motorboat on Forest Lake, which lake covers 152 acres of land, and is located about four miles outside the city limits of the city of Columbia.

Forest Lake and a large surrounding and contiguous acreage are owned by Forest Land Company, the respondent. The land bordering on the lake was subdivided into lots. Practically all of this lake front property has been sold, and dwellings have been erected thereon by the owners.

Appellants acquired title to two large lots on the lake front, one having been purchased from Forest Land Company and the other through successive conveyances from a grantee of the company. In both of their deeds the respondent granted certain boating rights, which provisions are contained in all of the conveyances held by those who bought property abutting on Forest Lake. All of the deeds, including those of appellants, grant certain rights and privileges in the following language:

"The grantee herein, his heirs and assigns, shall have and is hereby granted the right and privilege as appurtenant to the lot hereby conveyed, of fishing, hunting, boating and swimming in Forest Lake, subject to the following:

"(a) That said purchaser shall have the right and privilege of conveying as a whole, but not in part or separately the rights herein granted along with the conveyance by him of the title to the real estate herein mentioned;

"(b) That the said purchaser shall have the right to construct and maintain a dock, float or raft for swimming and boating purposes, the said dock, float or raft to be placed

and constructed so as not to interfere with the reasonable use of the said Forest Lake by the grantor herein or other owner;

"(c) That the use of Forest Lake shall be subject to reasonable rules of the Grantor, which may provide for closed seasons or terms for fishing or hunting and reasonably restrict the use of certain kinds of boats or motors and other kinds of craft."

Subsequent to the time that appellants acquired title to their lots, the respondent formulated and promulgated rules and regulations governing the use of the lake. The only one with which we are concerned reads as follows: "No motor boat is to be operated on the lake at any time."

The grievances complained of by respondent are that appellants, in violation of the foregoing rule, have maintained and operated a large and dangerous motorboat on Forest Lake, and have refused to discontinue its operation. It is charged that the operation of this motorboat constitutes a nuisance in that the noise and the reverberation arising therefrom disturb others who reside on the lake front; that it creates a hazard to persons swimming in the lake; that it generates waves which tend to wash away the beaches built up by others owning lots and dwellings on the lake front; and disturbs the fish beds, thereby destroying or greatly diminishing the reproduction of fish; and that the operation of this boat by appellant denies to respondent peaceful enjoyment of its property.

It is alleged that respondent has suffered irreparable damage, has no adequate remedy at law, and will be forced to a multiplicity of suits to maintain its rights unless the appellants are restrained and enjoined from the operation of their motorboat. And that the act of appellants constitutes a direct violation of the covenants, conditions and restrictions contained in their deeds.

Appellants answered and denied the material allegations of the complaint, after which the cause was referred to the

Master. He heard the testimony offered by the parties and made his report to the court, recommending that the restraining order previously granted be dissolved, and that the complaint be dismissed. Upon exceptions being taken to the circuit court, the report was set aside. New findings were made by the court, and a decree entered wherein it was adjudged that the appellants be permanently enjoined from the use or operation of a motorboat on Forest Lake. It was further decreed that the rule promulgated by Forest Land Company, *viz.*, that "No motor boat is to be operated on the lake at any time is just, reasonable and valid, and is a reasonable and valid exercise of its rule making power."

The record shows that the appellants purchased a Chris Craft sixty horse power inboard motorboat during the latter part of May, 1948, and had operated it from time to time for two or three weeks when the temporary restraining order was issued, enjoining them from using such boat on the lake.

By their briefs and in oral argument, the first inquiry of counsel was directed to the nature and import of the covenants and restrictions contained in appellants' deeds. Respondent contends that under the provisions contained in the deeds, it had a right to adopt a rule not only reasonably restricting the use of boats and motors on the lake, but also to completely prohibit the operation of motorboats thereon, including that of appellants. Appellants argue that under the covenants and restrictions contained in their deeds, the respondent has authority only to reasonably restrict the use of a motorboat and not to completely prohibit and prevent such use.

The initial inquiry then is whether or not the Land Company under the rights reserved in its deeds, may absolutely prohibit the use by appellants of a motorboat on Forest Lake.

Appellants' rights are derived from their deeds which are couched in language of respondent's own selection. The intention of the parties with reference to the property con-

veyed and the rights granted must be ascertained only from a fair construction of the words used in the deeds.

By its deeds, the respondent granted to appellants, their heirs and assigns, the right and privilege as appurtenant to the lots conveyed, of fishing, hunting, boating and swimming in Forest Lake subject to the following: "(c) That the use of Forest Lake shall be subject to reasonable rules of the Grantor, which may provide for closed seasons or terms for fishing or hunting and reasonably restrict the use of certain kinds of boats or motors and other kinds of craft."

We find no ambiguity in the foregoing quoted provision. It creates an easement by express grant which gives to appellants the right and privilege of operating a motor boat on Forest Lake, subject only to respondent's reserved right to *reasonably restrict* such use. This easement is appurtenant to the lots and constitutes an appropriate and useful adjunct to the land conveyed. An affirmative right such as we have here is one which entitles the owner of the dominant tenement (the appellants) to use the servient tenement, or clothes him with authority to do some act on the servient tenement which would otherwise be unlawful.

The generally approved definition of an easement is that it is a liberty, privilege or advantage without profit, which the owner of one parcel of land may have in the lands of another; or to state it from the opposite point of view, it is a service which one estate owes to another, or a right or privilege in one man's estate for the advantage or convenience of the owner of another estate. *Brasington v. Williams,* 143 S. C. 223, 141 S. E. 375; 28 C. J. S., Easements, § 1, Page 619.

The crucial issue presented here is whether the phrase "reasonably restrict," with reference to the use of certain kinds of boats or motors, may be construed to mean "prohibit."

The words "prohibit" and "restrict" are not synonymous. They are not alike in their meaning in their ordinary use; nor may it be gathered from a consideration of the context of the covenant or restriction under consideration, that when the expression "reasonably restrict" was used it meant prohibit or reasonably prohibit. As found in Vol. 37, Words and Phrases, Perm. Ed. Page 465, "To 'restrict' is to restrain within bounds; to limit; to confine, and does not mean to destroy or prohibit."

We find this same definition in Webster's New International Dictionary and in 54 C. J., Page 735.

Appellants were given the privilege and right, expressly granted, of boating on Forest Lake, subject to reasonable rules to be adopted by the grantor (respondent), and subject to the reserved right of the grantor to "reasonably restrict the use of certain kinds of boats and motors and other kinds of craft". If the intention of the grantor had been to utterly prevent the use of any kind of motorboat on Forest Lake, such intention could have been expressed in very clear and simple terms. But this was not done. Nor can such intention be deduced from the expression "reasonably restrict." As was well said in 26 C. J. S., Deeds, § 163, Page 517: "The court may not limit a restriction in a deed, nor, on the other hand, will a restriction be enlarged or extended by construction or implication beyond the clear meaning of its terms."

The fundamental rule in construing covenants and restrictive agreements is that the intention of the parties as shown by the agreement, governs. The intention is determined by a fair interpretation of the grant or reserve creating the easement. 14 Am. Jur., Sec. 211, Page 620.

In our opinion, the easement existing in favor of appellants as contained in the grant is without ambiguity. It is clear to us from the language used that the appellants have the right and privilege to operate a motor-

boat on Forest Lake, subject to rules made by respondent reasonably restricting such use. But respondent has no right or authority under the restriction quoted to absolutely prevent or prohibit such use.

The issue of nuisance remains to be considered. ■■ There can be no question that the rights of one claiming an easement by express grant are limited within the scope of the privilege. The extent of the servitude is determined by the terms of the grant. 19 C. J. 974; 28 C. J. S., Easements, § 87b. There is also little doubt that the owner of land over which easements have been granted may, ordinarily, restrain an excessive and unwarranted use of the easement. "An unlawful or excessive use of an easement may be enjoined." Joyce on Injunctions, Sec. 1021a; Pom. Eq. Jur., 2d Ed. Sec. 1961, Page 4459. This is especially true where the excessive use is continuous and repeated under a claim of ownership.

However, the respondent bases the acts constituting the alleged nuisance as outside of and not connected with any right or privilege derived from the restrictive covenants. An attempt was made to prove that the operation of the motor boat by appellants constituted a nuisance because of its noise and vibration; erosion of shore line and beaches, and disturbance of fish beds in Forest Lake.

Several lake front residents offered by each party gave their testimony.

Respondent's first witness, Mr. Boyd, stated that he and his family were disturbed by the noise and vibration incident to the operation of appellant's motorboat; and that the operation of any motorboat on the lake, regardless of speed, would constitute a disturbance; that if appellants' boat was operated at less speed, and made less noise, he would still raise an objection. He said, "It is my objective to have no motor boats on the lake". He further testified that he had never seen appellants' boat operated up and down the lake, and did not know what size waves the

boat made; that with reference to the operation of any motorboat, the waves formed are higher in close proximity to the boat, and greatly diminish and finally dissipate. In further explanation, he said that whether the waves dissipated entirely before reaching the shore would depend upon their initial height. He frankly said that so far as he knew, the operation of appellants' boat did not constitute a hazard to anyone.

Three or four other witnesses for respondent testified to having been disturbed by the noise emanating from appellants' motorboat, and to some erosion on the shore line, and a slight washing away of artificial beaches built up by hauling sand in. But we think it may reasonably be inferred that such erosion was more or less negligible. There was testimony that the use of a motorboat would imperial swimmers if operated too near the shore line, and that such operation would likewise depreciate property values. But none testified that appellants' boat had endangered anyone, or had been operated without due care. They said that it constituted a potential danger, dependent upon speed, negligence and the like. There was also some testimony that fish beds in the breeding season could be disturbed or destroyed by the creation of waves, dependent upon their size and frequency.

Appellants bought their boat at a cost of approximately $2,000.00, although they knew the prohibitory rule had been adopted by the Land Company; and they had operated it only two or three weeks before they were enjoined from using it. The appellant, Mr. Black, testified that in the purchase and operation of the boat he relied upon the easement expressly granted to him in his deed; and that unless permanently enjoined he would continue to operate his boat. He said, however; that he would be glad to abide by any reasonable rules and restrictions defining the conditions under which motorboats could be used on Forest Lake.

Appellants' witnesses, who are lake front residents, said they were not disturbed by appellants' boat, did not consider

its reasonable operation as constituting any hazard; discovered no erosion whatever on the shore line of their property; and if handled properly they had no objection to the operation of a motorboat on the lake.

Respondent's witnesses testified that there was no effective method to control the operation of a motorboat, except to utterly prohibit their use, because of a lack of police supervision. This may or may not be true, but no right or authority to absolutely prohibit the operation of a motorboat is reserved to the Land Company.

Many of the purchasers of these lake front lots bought their property and built their homes with the intention of boating on the lake, including the use of a motor. The operation of a motorboat may disturb some of the residents while it does not annoy others. They all, however, acquired their property by deeds with these easements incorporated therein, and with notice of the provisions of their grant.

The master to whom the cause was referred, and the appellants in their brief, have suggested that the respondent, in accordance with its reserved right, should make and promulgate reasonable rules restricting the use of motorboats as to size, speed, area, time, proximity to shore line, *et cetera*.

But respondent has not seen fit to impose restrictions, reasonable or unreasonable. It is not incumbent upon appellants or upon the court to attempt the formulation of what might constitute reasonable rules regulating the operation of motorboats on Forest Lake. This right is specifically reserved to the grantor (respondent), and it alone can act initially in this regard.

At the request of counsel for the parties, the master, before the reference closed, visited the lake and observed from the shore line the appellants' boat in operation; and also rode a considerable distance in the boat as a passenger. He reported that when the boat was operated at a speed of not more than fifteen miles an hour, the noise could be objectionable to no one; and that the waves caused by the boat's

operation were not excessive in height. He suggested that in order to obviate any possible damage from waves, boats should not be operated closer than ninety feet to the shore line.

In our opinion, the testimony does not demonstrate that the appellants, in the operation of their boat, and in the absence of rules and regulations, are guilty of creating a nuisance. Certainly the grievances of which respondent complains are largely under its own control. Its remedy, obviously, is to exercise those rights reserved to it in the grant, and make rules reasonably restricting the operation of motorboats on Forest Lake. Under the provisions of their deeds, appellants have a right to operate a motorboat, and they have expressed a willingness to comply with any reasonable rules thereabout which may be promulgated by respondent.

The circuit court in its decree largely relied upon the cases of *Douglas v. City Council of Greenville,* 92 S. C. 374, 75 S. E. 687, 49 L. R. A., N. S., 958, and *Fraser v. Fred Parker Funeral Home,* 201 S. C. 88, 21 S. E. (2d) 577. We do not regard the cited cases as relevant or controlling on the issue of nuisance. The first mentioned case deals with the constitutionality of a municipal zoning ordinance relating to livery stables. The second cited case deals with the operation of a funeral home in a residential area. However, in neither of these cases was there any contractual relationship between the party seeking the injunction and the party sought to be enjoined, as in the case at bar. Neither case deals with a situation in which the party seeking the injunction has granted to the other party the right, subject to reasonable restriction, to do the very thing sought to be enjoined.

The remedy of injunction is a drastic one and ought to be applied with caution. In cases where a mandatory injunction is sought, the general rule in this country, 28 Am. Jur., Sec. 54, Page 259, is that the court will balance the benefit of an injunction to the plaintiff

against the inconvenience and damage to the defendant, and grant an injunction or award damages as seem most consistent with justice and equity under the circumstances of the case.

We are constrained to hold, after a careful review of the record and the law, that the respondent is not entitled to an injunction in this case. Ordinarily under such circumstances, the respondent would be left to his remedy at law, but under the facts of this case the obvious remedy would be to exercise its rights in the formulation of reasonable restrictions governing the operation of motorboats on the lake.

Included in the provisions of the deeds held by the appellants is the following: "And it is understood and agreed that the said conditions and restrictions shall be appurtenant to and run with said premises; and that in the event of the violation of any of said conditions or restrictions that the said Grantor shall have the right of abatement and the right to enforce compliance by injunction or any other appropriate action without liability for damages. In the event Grantor shall by court action enforce the conditions and restrictions herein the Grantee herein, his heirs or assigns, or the then existing owners of the within described property shall pay all of the costs incident to the enforcement of the court action, including a reasonable amount of attorney fee for Grantor's attorney, all subject, however, to the rights of lien creditors attaching prior to such violation."

In accordance with its decree, which decided the issues presented in favor of the contentions made by the respondent, the lower court held that the institution of this action by the respondent was necessary in order to enforce the restrictions and conditions contained in the grant, and ordered and directed that the appellants pay all costs of the action, including a reasonable amount of attorney fee for respondent's attorney. The amount of the fee was designated. Appellants raise no objection to the size of the fee, but contend that no fee at all should be authorized.

The claimed right to recover an attorney's fee is derived from that paragraph of the restrictive covenant which we have quoted above. It specifically refers to "the violation of any of said conditions or restrictions". And "in the event grantor shall by court action enforce the conditions and restrictions herein, the grantee herein  *  *  *  shall pay all of the costs  *  *  *  including a reasonable amount of attorney fee for grantor's attorney".

But no conditions or restrictions were promulgated restricting the use of motorboats. On the contrary, the grantor undertook to completely prohibit the use of motorboats, which we hold it had no right to do. Under these circumstances, we do not think that the recovery from appellants of an attorney's fee can be justified.

Judgment reversed.

BAKER, C.J., and STUKES, TAYLOR and OXNER, JJ., concur.