808 S.E.2d 831

COMMUNITY SERVICES ASSOCIATES, INC., Appellant,

v.

Stephen H. WALL and Maria P. Snyder Wall, Respondents.

Appellate Case No. 2015-001795
Opinion No. 5525

Court of Appeals of South Carolina.

Heard October 10, 2017
Filed December 6, 2017

576

F. Ward Borden, of Jones Simpson & Newton, PA, of Bluffton, for Appellant.

Drew A. Laughlin, of Laughlin & Bowen, PC, of Hilton Head Island, for Respondents.

GEATHERS, J.:

Appellant Community Services Associates, Inc. (CSA) seeks review of an order of the Master-in-Equity denying CSA's request to permanently enjoin Respondents, Stephen H. Wall and Maria P. Snyder Wall (collectively, the Walls), from renting out the first floor of their single-family residence while simultaneously occupying the upstairs guest suite. CSA argues the master erred by (1) finding the Walls' residence had only one kitchen; (2) concluding the Walls' rental activity did not violate CSA's restrictive covenants; and (3) declining to consider a letter written by Respondent Maria P. Snyder Wall (Mrs. Wall) and published in a local newspaper after the merits hearing. We affirm.

## FACTS/PROCEDURAL HISTORY

On April 1, 1970, the Sea Pines Plantation Company adopted the current restrictive covenants that apply to residential and common areas within Sea Pines Plantation, a gated community on Hilton Head Island (the Covenants). Part I of the Covenants applies to all "Class 'A' Residential Areas" and includes, *inter alia*, the following restrictions:

5. All lots in said Residential Areas shall be used for residential purposes exclusively. No structure, except as hereinafter provided[,] shall be erected, altered, placed or permitted to remain on any lot other than one (1) detached single family dwelling not to exceed two (2) stories in height and one small one-story accessory building [that] may include a detached private garage and/or servant's quarters, provided the use of such dwelling or accessory building does not overcrowd the site and provided further[ ] that such building is not used for any activity normally conducted as a business. Such accessory building may not be constructed prior to the construction of the main building.

6. A guest suite or like facility without a kitchen may be included as part of the main dwelling or accessory building, *but such suite may not be rented or leased except as part of the entire premises*[,] including the main dwelling, and provided, however, that such guest suite would not result in over-crowding the site.

(emphasis added). Parts II through V, respectively, apply to only those areas designated as "Beach Residential," "Golf Fairway Residential," etc. The Sea Pines Plantation Company enforced the Covenants until CSA, a property owners' association, succeeded to the Covenants' enforcement.

In 1998, the Walls purchased their residence at 48 Planters Wood Drive in Sea Pines Plantation. According to Respondent Stephen H. Wall (Mr. Wall), the residence has one kitchen on the north side of the first floor. The second story of the residence consists of a guest suite that is accessible only by an outside staircase.

In 2012, the Walls began renting out a room in their residence through Airbnb, an online rental broker. The Walls' listing with Airbnb was titled "Hilton Head Organic B&B, Sea Pines" and indicated that the room accommodated three indi-

viduals. The Walls also cooked breakfast for their renters. After CSA expressed concern about the Walls' rental activity, the Walls changed their listing with Airbnb to the "Whole House" category and began renting out the entire first floor while living in the second-story guest suite themselves. They also dropped the title "Hilton Head Organic B&B, Sea Pines" and stopped cooking breakfast for their renters.

On September 25, 2014, CSA filed a Verified Complaint against the Walls, seeking temporary and permanent injunctions against the Walls' alleged operation of "a bed and breakfast" in their residence and the rental of merely part of the residence rather than the entire residence. In its complaint, CSA asserted that the Covenants, specifically paragraphs five and six of Part I, authorize the short-term rental of an entire residence but not part of a residence.

The Walls filed a Verified Answer asserting they advertised on airbnb.com in the "Whole House" category and that they remained in the guest suite when their whole house was rented. However, the Walls denied CSA's allegation that they were operating a bed and breakfast in their residence. The master conducted a hearing on CSA's temporary injunction request on April 7, 2015, which was continued to April 21, 2015. On this later date, the master received evidence on CSA's requests for temporary and permanent injunctions.

On May 7, 2015, the master issued an order denying CSA's requests for injunctive relief and dismissing the Verified Complaint. CSA filed a motion to alter or amend the judgment, and the master conducted a hearing on the motion on June 28, 2015. Subsequently, CSA requested the master to consider a letter to the editor of *The Island Packet*, a local newspaper, written by Mrs. Wall concerning the benefits of Airbnb versus a new hotel on the island. The master declined to consider the letter. On August 10, 2015, the master issued an order denying CSA's motion to alter or amend. This appeal followed.

## ISSUES ON APPEAL

1. Did the master err by finding the Walls' residence had only one kitchen?
2. Did the master misinterpret paragraphs five and six of Part I of the Covenants?

3. Was the letter written by Mrs. Wall and published in *The Island Packet* relevant to the issues in the case?

## STANDARD OF REVIEW

"This [c]ourt reviews all questions of law de novo." *Fesmire v. Digh*, 385 S.C. 296, 302, 683 S.E.2d 803, 807 (Ct. App. 2009); *see also Clardy v. Bodolosky*, 383 S.C. 418, 425, 679 S.E.2d 527, 530 (Ct. App. 2009) ("A legal question in an equity case receives review as in law." (quoting *Sloan v. Greenville Cty.*, 356 S.C. 531, 546, 590 S.E.2d 338, 346 (Ct. App. 2003))); *id.* ("Questions of law may be decided with no particular deference to the trial court." (quoting *S.C. Dep't of Transp. v. M & T Enters. of Mt. Pleasant, LLC*, 379 S.C. 645, 654, 667 S.E.2d 7, 12 (Ct. App. 2008))). "Review of the trial court's factual findings, however, depends on ... whether the underlying action is an action at law or an action in equity." *Fesmire*, 385 S.C. at 302, 683 S.E.2d at 807 (citing *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85–86, 221 S.E.2d 773, 775–76 (1976)).

 "An action to enforce restrictive covenants by injunction is in equity." *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001). "On appeal from an action in equity, [the appellate court] may find facts in accordance with its view of the preponderance of the evidence." *Walker v. Brooks*, 414 S.C. 343, 347, 778 S.E.2d 477, 479 (2015). "However, this broad scope of review does not require this court to disregard the findings at trial or ignore the fact that the trial judge was in a better position to assess the credibility of the witnesses." *Laughon v. O'Braitis*, 360 S.C. 520, 524–25, 602 S.E.2d 108, 110 (Ct. App. 2004). Further, "this broad scope does not relieve the appellant of [the] burden to show that the trial court erred in its findings." *Ballard v. Roberson*, 399 S.C. 588, 593, 733 S.E.2d 107, 109 (2012); *accord Pinckney v. Warren*, 344 S.C. 382, 387–88, 544 S.E.2d 620, 623 (2001).

## LAW/ANALYSIS

### I. Number of Kitchens

██ CSA argues the master erred by finding the Walls' residence had only one kitchen because the evidence shows

the Walls have a kitchen in the upstairs guest suite. We disagree.

Mr. Wall testified he and Mrs. Wall kept an induction plate, a toaster oven, and a mini-refrigerator in the guest suite and they occasionally prepared food for themselves with these appliances. Mr. Wall also stated he and Mrs. Wall washed their dishes in the guest suite. CSA argues this evidence shows the Walls had a kitchen in the guest suite because "[t]he usual and customary meaning of 'kitchen' is 'a room or area where food is prepared and cooked.'" However, even CSA's chosen definition of kitchen necessarily implies that the room is dedicated exclusively to preparing and cooking food, and there is no evidence showing that the Walls' guest suite has a room dedicated exclusively to this purpose. We agree with the master that the Walls' use of certain "dormitory-style portable appliances to store and prepare foods on the second floor does not create a kitchen, as the term is commonly used." Therefore, we affirm the master's finding that the Walls' residence had only one kitchen and this kitchen is located on the first floor.

## II. Violation of Covenants

CSA also argues the master erred by concluding the Walls' activity of renting out the first floor of their residence while simultaneously occupying the upstairs guest suite did not violate the Covenants. CSA asserts the master misinterpreted paragraphs five and six of Part I of the Covenants because these two provisions, read together, require a residence to be rented in its entirety. We disagree.

"'Restrictive covenants are contractual in nature,' so that the paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." *Taylor v. Lindsey*, 332 S.C. 1, 4, 498 S.E.2d 862, 863–64 (1998) (quoting *Palmetto Dunes Resort v. Brown*, 287 S.C. 1, 6, 336 S.E.2d 15, 18 (1985)). "When the language of a contract is clear, explicit, and unambiguous, the language of the contract alone determines the contract's force and effect and the court must construe it according to its plain, ordinary, and popular meaning." *Moser v. Gosnell*, 334 S.C. 425, 430, 513 S.E.2d 123, 125 (Ct. App. 1999). Accordingly, when "the lan-

guage imposing restrictions upon the use of property is unambiguous, the restrictions will be enforced according to their obvious meaning." *Shipyard Prop. Owners' Ass'n v. Mangiaracina*, 307 S.C. 299, 308, 414 S.E.2d 795, 801 (Ct. App. 1992).

 "A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation." *McClellanville*, 345 S.C. at 623, 550 S.E.2d at 302. When such an ambiguity exists, all doubts are to be "resolved in favor of free use of the property." *Hardy v. Aiken*, 369 S.C. 160, 166, 631 S.E.2d 539, 542 (2006). Thus, "a restriction on the use of the property must be created in express terms or by plain and *unmistakable* implication." *Id.* (emphasis added) (quoting *Hamilton v. CCM, Inc.*, 274 S.C. 152, 157, 263 S.E.2d 378, 380 (1980)).

"The court may not limit a restriction in a deed, nor, on the other hand, will a restriction be enlarged or extended by construction or implication beyond the clear meaning of its terms["] even to accomplish *what it may be thought* the parties would have desired had a situation which later developed been foreseen by them at the time when the restriction was written.

*Taylor*, 332 S.C. at 4, 498 S.E.2d at 864 (emphasis added) (quoting *Forest Land Co. v. Black*, 216 S.C. 255, 262, 57 S.E.2d 420, 424 (1950)).

Here, the parties agreed the only provisions in the Covenants that bear on the Walls' rental activity are paragraphs five and six of Part I, which state, .

5. All lots in said Residential Areas shall be used for residential purposes exclusively. No structure, except as hereinafter provided[,] shall be erected, altered, placed or permitted to remain on any lot other than one (1) detached single family dwelling not to exceed two (2) stories in height and one small one-story accessory building [that] may include a detached private garage and/or servant's quarters, provided the use of such dwelling or accessory building does not overcrowd the site and provided further[ ] that such building is not used for any activity normally conducted as a business. Such accessory building may not be constructed prior to the construction of the main building.

6. A guest suite or like facility without a kitchen *may* be included as part of the main dwelling or accessory building,

*but such suite may not be rented or leased* except as part of the entire premises[,] including the main dwelling, and provided, however, that such guest suite would not result in over-crowding the site.

(emphases added).

 The express terms of paragraph six require a residence with a guest suite to be rented in its entirety *when the guest suite is rented out.* However, paragraphs five and six do not, by their express terms or by plain and *unmistakable* implication, require a residence with a guest suite to be rented in its entirety in every circumstance. *See Hardy,* 369 S.C. at 166, 631 S.E.2d at 542 ("[A] restriction on the use of the property must be created in express terms or by plain and *unmistakable* implication, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property." (emphasis added) (quoting *Hamilton,* 274 S.C. at 157, 263 S.E.2d at 380)). Therefore, this court may not interpret paragraphs five and six to include such a requirement even if it could be reasonably implied. In other words, it is not enough for the implication to be reasonable—it must be unmistakable. *See Taylor,* 332 S.C. at 4, 498 S.E.2d at 864 (" 'The court may not limit a restriction in a deed, nor, on the other hand, will a restriction be enlarged or extended by construction *or implication* beyond the *clear* meaning of its terms['] even to accomplish what it may be thought the parties would have desired had a situation which later developed been foreseen by them at the time when the restriction was written." (emphases added) (quoting *Forest Land Co.,* 216 S.C. at 262, 57 S.E.2d at 424)).

 At best, paragraphs five and six are capable of two reasonable interpretations: (1) a residence with a guest suite must be rented in its entirety in every circumstance or (2) the owners of a single family dwelling with a guest suite may stay in the guest suite themselves while renting out the remaining space. *See McClellanville,* 345 S.C. at 623, 550 S.E.2d at 302 ("A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation."). Because the latter interpretation "least restricts the use of the property," we must adopt this interpretation. *See Taylor,* 332 S.C. at 4, 498 S.E.2d at 864 ("[When] the language of the

restrictions is equally capable of two or more different constructions that construction will be adopted which least restricts the use of the property.").

Additionally, the evidence shows the Walls complied with all of the express terms of paragraphs five and six. It is undisputed that short-term rentals do not violate the requirement that all lots shall be used for residential purposes. It is also undisputed that the Walls had only their two-story dwelling on the site and did not rent out their guest suite. While the presence of a kitchen in the guest suite, which is prohibited by paragraph six, was disputed, the master properly resolved this issue in favor of the Walls. *See supra* Part I. Finally, Brett Martin, CSA's president, admitted he was not aware of CSA receiving any complaints that the Walls' use of their home was overcrowding the site, as is prohibited by paragraph six of Part I of the Covenants.

Based on the foregoing, the master properly concluded the Walls' rental activity did not violate the Covenants.

### III. Post-hearing Evidence

Finally, CSA maintains the master erred by declining to consider a letter written by Mrs. Wall after the merits hearing and published in *The Island Packet* on August 2, 2015. CSA contends the master had discretion under Rules 52(b) and 59(a), SCRCP, to take additional evidence and the letter was relevant to whether the Walls actually believed their activities violated the Covenants. We disagree.

Initially, this issue is not preserved for review because CSA did not cite Rules 52 and 59 in its request for the master to consider Mrs. Wall's letter. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." (quoting *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998))).

In any event, the master properly declined to consider Mrs. Wall's letter because it was not relevant to the issues in the case. The language cited by CSA refers to Airbnb and states, "As a community, we should explore the benefits that this sustainable business model brings. We should have a town

meeting and engage in healthy dialogue." In his letter requesting the master to consider this language, counsel states,

We believe this letter demonstrates [Mrs.] Wall's actual view of the 'sustainable business model' as she described it—calling it 'a far better solution than a new hotel.' She also calls for a town meeting to 'engage in healthy dialogue'—an apparent admission that this business model does not comport with the current covenants and restrictions.

In response, the master stated, "Thank you for the message, however, I'm not going to consider matters outside the original record. Also, [CSA's] interpretation of 'healthy dialogue' seems a stretch." We agree with the master that the highlighted language is not an admission that the Walls' activities with Airbnb violated the Covenants. Therefore, even if the master was under the mistaken impression that he could not accept additional evidence, his alternative ground for excluding the letter, its lack of relevance, was valid. *See* Rule 402, SCRE ("Evidence [that] is not relevant is not admissible."); Rule 401, SCRE (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

## CONCLUSION

Accordingly, we affirm the master's order.

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.